IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

NORTHERN DISTRICT, JULY TERM 1839.

## M'Doal *against* Yeomans.

In an action on a contract of guaranty, that a promissory note, payable to J. S. or bearer, " is collectible," insolvency of the maker excuses the want of an attempt to collect the debt from him by process.

But such an action can be maintained only by him with whom the contract was made, and consequently not by a subsequent holder of the note.

And no presumption arises that a holder, not named, either in the note or in the guaranty, was a party to the contract.

THIS writ of error was brought up from the common pleas of Susquehanna county; the record of an action on a contract of guaranty endorsed on a promissory note for eleven dollars and eighty-nine cents, drawn on the 19th of December 1835, by Jonas R. Adams, and made payable to Samuel Yeomans or bearer, at ten days from the date. The guaranty was in these words: " This may certify, that I warrant the within to be collectible. Brooklyn, June 11, 1836. Samuel Yeomans." The execution of it being admitted at the trial, the plaintiff offered, in excuse of the want of an action against the maker, proof that he was so utterly insolvent that an action would have been fruitless; which was rejected, and the plaintiff excepted.

VIII.—2 F*

[M'Doal v. Yeomans.]

*Lusk,* for plaintiff in error, insisted that it was unnecessary to show that the maker had been pursued; and that proof of his insolvency was competent, to preclude an inference of negligence from inaction; for which he cited 9 *Serg. & Rawle* 201; 4 *Watts* 450; 3 *Penn. Rep.* 18; 16 *Serg. & Rawle* 79.

*Dimmock, contra,* insisting that recourse ought to have been had to the principal debtor in the first instance, contended that the case set forth in the offer would not have entitled the plaintiff to recover in the character of a mere holder, being deficient in proof that he was a party to the contract; and he relied on 2 *Watts* 129; 6 *Cowan* 624; 5 *Wendel* 307.

The opinion of the Court was delivered by

GIBSON, C. J.—If the maker was insolvent, the contract was broken the instant it was made, and the guarantee had an immediate right of action on it. The words of a guarantor are to be taken as strongly against him as the sense will bear, tempered, however, by the circumstances of the occasion. To warrant that a debt is collectible, therefore, is to warrant that it is legally demandable, and that the debtor is of competent ability to answer it —not that he will pay it when demanded by execution. That an execution would be a very satisfactory test of his ability, is indubitable; but that it is the only legitimate one, is disproved by those cases in which insolvency has been established by matter *in pais,* as legal excuse for an omission of notice by an endorsee; and it would be unreasonable to exact a greater measure of proof from a guarantee, by suspending his remedy till he had demonstrated that there had been a breach of the contract by actual experiment, a condition which, in this case, was not expressly or impliedly prescribed. It is, indeed, possible that an action prosecuted to extremity, might have extorted the debt from the sympathies of the debtor's friends; but it is equally possible that an adverse title, though perfect in all its parts, might be rendered unavailing by some unforeseen accident in an ejectment against the vendee of a warranted title, yet he is not bound to hold the possession till it is wrested from him by process, to enable him to have recourse to his covenant of warranty. These are remote contingencies, which, unless they are specially provided for, enter not into the stipulations of a contract. Where, indeed, an action against the principal debtor is made a condition precedent by the terms of the guaranty, it must first be prosecuted to execution; but that it was intended to be a condition, must appear from some circumstance or expression in the contract.

But the proof, as it was offered, would not have shown the plaintiff to be a party to the guaranty. By the seventeenth section of the British statute of frauds, a promise to answer the debt of another must be in writing, and the names of the parties, in England,

[M'Doal v. Yeomans.]

being parcel of it, must consequently be stated in it, as was held in Champion *v.* Plummer, 1 *N. R.* 252. Unfortunately, that part of the statute has not been re-enacted by our legislature; and it might seem doubtful, on the principle of Dutton *v.* Poole, 1 *Vent.* 318, whether an action could not be maintained by the holder of a guarantied note, who, though unnamed in the contract, is interested in the subject of it, just as a party unnamed, but interested in an insurance, may have an action on an unsealed policy, " for the benefit of J. S., and all others whom it may concern." The principle was applied also, in Lawrason *v.* Mason, 3 *Cox* 492, to a general guaranty, addressed by letter to the person who gained the credit by it. In that case, however, the exigencies of the action did not require the security of the promise to be extended to a transferee; yet I at first thought the law might apply the guaranty of a note, payable to bearer, successively to each holder of it on the basis of a distinct promise to each, for which each transfer would be a sufficient consideration. But in Grant *v.* Vaughan, 3 *Burr.* 1522, it was determined that the holder's action on the note itself, is sustainable only by force of the statute of Anne; and the precedents show that the promise must be stated in the declaration to have been made, not to the transferree, but to the designated payee where there is one, and consequently that there is no promise to any one else. Then, even viewing the guaranty as an accessory of the note, which is the most favorable aspect for the plaintiff, it would not afford an action in the name of the transferee without help from the statute; which, however, operates exclusively on the principal contract. But it is not even an accessory; for, as it was said in Lamourieux *v.* Hevit, 5 *Wend.* 308, it would have the same effect were it written on a separate paper; and certainly a guaranty is not separately negotiable by the statute, or the custom of merchants: it is a special contract, which can be enforced only by a party to it. That case is the present in every respect, except that the plaintiff was positively proved in it to have come in as a subsequent holder, and that here there is no proof at all on the subject. But the *onus probandi* rests on him who seeks to recover on a contract, with which he is ostensibly unconnected. As to the suggestion, that presumption might stand for proof that there had not been an intermediate holder, in the absence of proof to the contrary, it is sufficient to say that a presumption of fact arises only from a violent probability, deduced from the constitution of things; and is there a violent probability that a chose in action, which was purposely fitted to the business of general circulation, had not been negotiated? Experience, which is the mother of presumption, answers that there is not. Even a bank note, which is a constituent of the currency, is nothing else than a promissory note payable to bearer; and there can not be one rule for the note of a corporation, and another for the note of an individual; or, one law for the town and another for the country. There was, in truth, no pre-

- sumption either way; and as the plaintiff did not propose to prove that he was actually a party to the contract, the rejection of his offer, which contained his whole case, is entirely defensible.

Judgment affirmed.