*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0659**

Sandra Jean Lonneman,
Appellant,

vs.

Michael Itskovich, et al.,
Respondents.

**Filed November 23, 2015
Affirmed
Connolly, Judge**

Hennepin County District Court
File No. 27-CV-14-7001

Sandra J. Lonneman, Pine Island, Minnesota (pro se appellant)

Bill A. Itskovich, Bloomington, Minnesota (for respondents)

Considered and decided by Reyes, Presiding Judge; Connolly, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

Appellant, Sandra Jean Lonneman, challenges the district court's summary-judgment dismissal of her claims against respondent Michael Itskovich, who guaranteed a December 2008 contract between appellant and respondent IMB Distribution Inc. (IMB).

Appellant asserts that the district court erred by concluding that a subsequent contract, which respondent did not guarantee, completely replaced the December 2008 contract. Because we conclude that the subsequent contract completely replaced the December 2008 contract, and that the subsequent contract was not guaranteed by respondent, we affirm.

## FACTS

Prior to December 2008, appellant acquired sole ownership of Marcel's Coffee (Marcel's) following the finalization of divorce proceedings between appellant and her former husband. By December 2008, as a result of financial difficulty, Marcel's could no longer continue to operate. At a meeting on December 20, 2008, respondent IMB signed a lease with appellant to operate in Marcel's former space. After IMB began to operate in its newly leased space, it used and sold certain assets previously used by Marcel's.[1] After two meetings in December 2008, counsel for appellant drafted a document entitled "consulting agreement" which provided that respondent IMB would retain appellant as a consultant and independent contractor for ten years in exchange for $400,000 to be paid over the ten-year term. Respondent Itskovich signed the consulting agreement on behalf of respondent IMB and also signed a personal guaranty for the amount of the 2008 consulting agreement. The guaranty read: "Michael Itskovich acknowledges that he has

---

[1] Respondents insisted at the trial level that IMB and appellant entered into an asset purchase agreement to purchase the assets of Marcel's around the same time IMB leased the commercial space previously occupied by Marcel's. The district court ruled that the parties never entered into an asset purchase agreement and neither party challenges this finding on appeal.

read and approved the foregoing consulting contract and agrees to personally guarantee the payment of all sums required to be paid thereunder."

Approximately two weeks after IMB began to operate in the space previously occupied by Marcel's, MI Bank, a creditor of Marcel's, entered the premises to seize the assets pledged by Marcel's including those being used by respondent IMB. On February 2, 2009 an auctioneer entered the commercial space and auctioned the remaining physical assets of Marcel's.

Sometime after the seizure and auction, respondents returned to appellant to renegotiate the consulting agreement in light of the fact that MI Bank had seized the assets. The parties executed the second consulting agreement sometime shortly after February 2, 2009.[2] The second consulting agreement was similar to the 2008 consulting agreement except appellant's consulting term was changed to three years instead of ten years and appellant's consulting fee was adjusted to $108,000 to be paid over three years. Although a personal guaranty was included as part of the second consulting agreement, respondent Itskovich did not sign it.

Appellant, in her summary-judgment motion, alleged that she was under "enormous stress," that she "did not realize that it was in fact [her] right to take action if IMB did not honor their payment obligations," and signed the second agreement "in spite of [her] own arguments just to end the emotionally upsetting and continual conflict." However, appellant does not allege, nor did the district court find any evidence of, fraud, duress, or coercion in the procurement of the second consulting agreement.

---

[2] The second consulting agreement was backdated to December 31, 2008.

Respondent IMB made multiple payments to appellant totaling $15,000 in 2009 and $15,000 in 2010 pursuant to the second consulting agreement. After 2010, no further payments were made by respondent IMB to appellant.

The district court granted summary judgment on appellant's breach-of-contract claims in appellant's favor, ruling that respondent IMB breached the second consulting agreement, which properly replaced the first consulting agreement and awarding appellant $81,488.41. However, the district court dismissed respondent Itskovich because the second consulting agreement replaced the first agreement and contained no signed personal guaranty. Appellant now challenges the summary-judgment dismissal of respondent Itskovich from this action.

**D E C I S I O N**

"On appeal from summary judgment, we must review the record to determine whether there is any genuine issue of material fact and whether the district court erred in its application of the law." *Dahlin v. Kroening*, 796 N.W.2d 503, 504-05 (Minn. 2011). "We review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted).

"Absent ambiguity, the interpretation of a contract is a question of law." *Roemhildt v. Kristall Dev., Inc.*, 798 N.W.2d 371, 373 (Minn. App. 2011), *review denied* (Minn. July 19, 2011). "The determination of whether a contract is unambiguous

4

depends on the meaning assigned to the words and phrases in accordance with the apparent purpose of the contract as a whole." *Halla Nursery, Inc. v. City of Chanhassen*, 781 N.W.2d 880, 884 (Minn. 2010). "When the intent of the parties can be determined from the writing of the contract, the construction of the instrument is a question of law for the court to resolve, and this court need not defer to the district court's findings." *Alpha Real Estate Co. of Rochester v. Delta Dental Plan of Minn.*, 671 N.W.2d 213, 221 (Minn. App. 2003) (quotation omitted), *review denied* (Minn. Jan. 20, 2004).

In a thoughtful and well-reasoned opinion, the district court ruled that the 2008 consulting agreement was replaced by the second consulting agreement that contained no signed guaranty. Additionally, the district court held that "by its unambiguous terms, [the original guaranty] refers only to the specific agreement into which it is incorporated." Even though the same guaranty was included in the second consulting agreement, respondent Itskovich did not sign the second guaranty.

Appellant argues that the district court erred in determining that the terms of the signed guaranty were limited to the terms of the first consulting agreement. We disagree. "[W]hen a contract is unambiguous, a court gives effect to the parties' intentions as expressed in the four corners of the instrument, and clear, plain, unambiguous terms are conclusive of that intent." *Knudsen v. Transp. Leasing/Contract, Inc.*, 672 N.W.2d 221, 223 (Minn. App. 2003), *review denied* (Minn. Feb. 25, 2004).

> A personal guaranty is a significant business transaction. A person signing as guarantor is agreeing to pay, if need be, the debt of another, never an agreeable task for the person signing but a prudent business precaution for the financing party. In

> these circumstances the law requires guarantors to abide by what they have agreed to.

*Borg Warner Acceptance Corp. v. Shakopee Sports Ctr., Inc.*, 431 N.W.2d 539, 541 (Minn. 1988). "[A] guaranty is not to be unduly restricted by technical interpretation nor enlarged beyond the fair and natural import of its terms. However, once the intent of the parties has been ascertained, the guarantor has the right to insist upon strict compliance with the terms of his obligation." *Am. Tobacco Co. v. Chalfen*, 260 Minn. 79, 81, 108 N.W.2d 702, 704 (1961).

By its unambiguous terms, the personal guaranty in the 2008 consulting agreement applies to "the foregoing consulting contract." We hold that the intent of the parties can be derived from the plain language of the guaranty, as well as the inclusion of an unsigned guaranty in the second consulting agreement. The second consulting agreement was clearly meant as a substitution of the first, indicating that the first guaranty applied only to the terms of the first consulting agreement. Because the guaranty is restricted to "the foregoing consulting contract" respondent Itskovich has the right to insist upon strict compliance with the terms of the first guaranty. Furthermore, the unsigned guaranty attached to the second consulting agreement clearly shows the intent of the parties to not have Itskovich guarantee the terms of the second consulting agreement.

Appellant argues that the guaranty should extend to the substituted second consulting agreement because of the rule that states that, for any departure from the terms of the guaranty contract to release the guarantor, there must be a deviation that is prejudicial to the guarantor. *See Dewey v. Henry's Drive-Ins of Minnesota, Inc.*, 301

6

Minn. 366, 370, 222 N.W.2d 553, 555 (1974); *Dresser v. North Star World's Fair Corp.*, 289 Minn. 530, 531, 185 N.W.2d 284, 286 (1971); *Estate of Frantz v. Page*, 426 N.W.2d 894, 898 (Minn. App. 1988) ("A material alteration in the principal contract, after execution of the guaranty contract and without the guarantor's consent, discharges the guarantor *if the guarantor is prejudiced by the alteration.*") (emphasis added), *review denied* (Minn. Sept. 16, 1988). However, the cases cited by appellant are distinguishable because none involved a second unsigned guaranty that accompanied the modification or substitution of the underlying obligation to which the guaranty was tied. Because the second unsigned guaranty represents the clear intent of the parties that Itskovich would not personally guarantee the second agreement, this case is factually dissimilar and there does not need to be a showing that Itskovich was prejudiced by the alteration.

Appellant additionally argues that the district court erred in concluding that the subscribed portion of the second consulting contract did not require additional consideration. We disagree. "Minnesota follows the long-standing contract principle that a court will not examine the adequacy of consideration as long as something of value has passed between the parties." *Brooksbank v. Anderson*, 586 N.W.2d 789, 794 (Minn. App. 1998) (quotation omitted), *review denied* (Minn. Jan. 27, 1999). "A modification of a contract does not require a new consideration if it is made while the contract is still executory and there has been no breach. In such case the original consideration attaches to and supports the modified contract." *Id.* at 793 (quotation omitted). An executory contract is "a contract that remains wholly unperformed or for which there remains something still to be done on both sides." *Black's Law Dictionary* 344 (8th ed. 2004).

7

As payment for consultation had not begun when the second consulting agreement was substituted for the first, and neither party at the time of the substitution was in breach, we agree with the district court that the consulting agreement was still executory. As such, we find that the second consulting agreement did not require additional or new consideration. Appellant's argument that the current case is distinguishable from *Brooksbank* is unavailing. This case does not involve a unilateral modification benefiting only the respondent as appellant argues. Additionally, appellant has not alleged fraud in the inducement, coercion, or duress.

Because we find that the unambiguous terms of the contract clearly expressed the parties' intent that the second consulting agreement replaced the first one and was supported by consideration, and because the second consulting agreement did not contain a signed guaranty, we agree with the district court's summary-judgment dismissal of respondent Itskovich as personal guarantor.

**Affirmed.**

8